United States District Court
for the
Southern District of Florida

| | |
|---|---|
| William K. Beeker, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-22771-Civ-Scola |
| | ) |
| City of Miami Beach, Defendant. | ) |

**Order Granting Motion to Dismiss**

This matter is before the Court on the City of Miami Beach's (the "City") motion to dismiss (Mot., ECF No. 35) Plaintiff William K. Beeker's amended complaint (Am. Compl., ECF No. 33). Mr. Beeker first filed this action in July 2021. (ECF No. 1.) The City filed a motion to dismiss, (ECF No. 12), which Mr. Beeker did not respond to. However, at his request, the Court granted Mr. Beeker leave to file an amended complaint weeks after his deadline to respond to that motion. (ECF No. 32.) Following Mr. Beeker's amended complaint, the City again filed a motion to dismiss to which Mr. Beeker has not timely responded. The City's current motion is thus ripe for review, and is hereby **granted** as set forth below.

**1. Background**

Mr. Beeker is a 56-year-old white non-Hispanic police officer employed by the City. He was suspended from duty after he appeared in "skits" performed by a group of "scantily clad women," (*See* Am. Compl. ¶ 1) that were posted in two Instagram posts and went viral among 14.4 million viewers worldwide. (Mot. 11.) In one post, the City says that Mr. Beeker "is depicted in engaging in a mock arrest of three (3) women who are dressed in lingerie." (*Id.*) In the other, "the same three women are surrounding [Mr. Beeker] while he is on his police-issued ATV . . . [and] identify [Mr. Beeker] by name." (*Id.*) The City says it disciplined Mr. Beeker to 160 hours of suspension without pay for two reasons. First, because of his appearance in the video—which the City says cast its police department it in a "negative light." And second, because, according to the City, Mr. Beeker lied at his pre-disciplinary hearing when he said "he did not voluntarily participate in the videos, despite overwhelming evidence to the contrary," (*id.* at 12.)—a claim he again makes before the Court. (*See* Am. Compl. ¶ 1.)

Mr. Beeker charges that other officers have engaged in comparable conduct but not faced similar reprimand. On that ground, he sues the City on

six counts of discrimination under: the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C § 621 *et seq.*; Title VII of the 1964 Civil Rights Act, 42 U.S.C § 2000e *et seq.* ("Title VII"); Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11 ("FCRA"). Counts 1 and 4 assert age discrimination under the ADEA and FCRA. Counts 2 and 5 allege race discrimination under Title VII and the FCRA. Counts 3 and 6 allege national origin discrimination under Title VII and the FCRA.

### 2. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Additionally, Local Rule 7.1(c)(1) requires a plaintiff to respond to a motion to dismiss no later than 14 days after service of the motion. Failure to do so "may be deemed sufficient cause for granting the motion by default." L.R. 7.1(c)(1).

### 3. Discussion

The City filed its motion on February 22, 2022. Mr. Beeker's response to the City's motion is well overdue. The Court bases its dismissal on Local Rule 7.1(c)(1) and on its agreement with the City's arguments as to Mr. Beeker's Title VII and ADEA claims, which also apply to his FCRA claims. *Ashkenazi v. South Broward Hosp. Dist.*, 607 F. App'x 958, 960–61 (11th Cir. 2015) (citing *City of Hollywood v. Hogan*, 986 So. 2d 634, 641 (Fla. 4th DCA 2008) ("Federal case law interpreting Title VII and the ADEA applies to cases arising under the FCRA.")).

For Title VII race and national origin claims, a complaint need only contain sufficient "factual matter to support a reasonable inference" that the defendant engaged in unlawful discrimination on the basis of race or national origin. *See Borenstein v. Williams Island Prop. Owners Ass'n, Inc.*, No. 16-25182-CIV, 2019 WL 1406466, at *2 (S.D. Fla. Mar. 28, 2019) (Williams, J.) (citing *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011); *see also Ruedas-Rojas v. McAleenan*, No. 19-CV-22522, 2020 WL 6143652, at *7 (S.D.

Fla. June 1, 2020). The complaint need not set forth a prima facie case of discrimination. *Bornstein*, 2019 WL 1406466 at *2. A plaintiff can meet this pleading standard by alleging facts showing that similarly-situated persons outside his protected class were treated more favorably. *See Henderson*, 436 F. App'x at 937.

However, Mr. Beeker entirely fails to plead as much. His amended complaint identifies ten people that he alleges are similarly situated to him. Those are: the City's former Chief of Police, Dan Oates; the City's current Chief of Police, Richard Clements; Major Samuel Guerrero; Captain Steven Feldman; Lieutenant Gregory Baldwin; Sargeant Shantell Mitchell; and Officers Michael Otero, Christopher Mitchell, Lavaniel Hicks, and Corey Jackson. As a threshold matter, the officers with higher ranks than Mr. Beeker cannot plausibly be "similarly situated" to him given their differences in responsibilities, pay, and function. *See Mizell v. Miami-Dade Cty., Fla.*, 342 F. Supp. 2d 1084, 1096 (S.D. Fla. 2004), *aff'd sub nom. Mizell v. Miami-Dade Cty.*, 147 F. App'x 871 (11th Cir. 2005) ("As an obvious preliminary point, Lieutenant Hafner cannot be similarly situated to [Officer] Mizell because their ranks are not equal."). To be sure, a viable comparator must be "similarly situated in all material aspects." *Stimson v. Stryker Sales Corp.*, 835 F. App'x 993, 997 (11th Cir. 2020); *Ashmore v. F.A.A.*, No. 11-CV-60272, 2011 WL 3915752, at *4 (S.D. Fla. Sep. 2, 2011) (Altonaga, J.) (citing *Dawson v. Miami-Dade Cnty.*, No. 07-20126 CIV, 2008 WL 1924266, at *8-*9 (S.D. Fla. 2008) (Seitz, J.)).

"Ordinarily, a similarly situated comparator will have engaged in the same basic misconduct as the plaintiff, been under the same supervisor, shared the plaintiff's disciplinary and employment history, and been subject to the same employment policy." *Stimson*, 835 Fed. App'x at 997. Of the persons he cites, Mr. Beeker's only possible comparators are those he shares the same rank with—Officers Otero, Mitchell, Hicks, and Jackson. Mr. Beeker points to these officers as having been engaged in similar conduct with more favorable outcomes. According to him, "the substantially younger, black and Hispanic" Officers Mitchell and Otero posed for a photograph with "scantily clad women (although concededly less scantily than the women in the video)" but suffered no adverse action. (Am. Compl. ¶¶ 25-26.) The City posted that photograph online, (Mot. 12), "to give the impression that the City's police department engages in community-based policing and is friendly toward beach-goers." (Am. Compl. ¶ 25.)

Neither party offers the Court an indication as to whether Officers Mitchell and Otero knew that they were posing for a photo that would be sanctioned by the City. If they did, their conduct would be immediately distinguishable from Mr. Beeker's (*i.e.*, pre-approved conduct vs. not). Regardless, the Court finds it

difficult to understand why Mr. Beeker believes his conduct was similar to those of Officers Mitchell and Otero. Mr. Beeker adamantly asserts that he was not aware that he was being recorded whereas Officers Mitchell and Otero certainly knew they were being photographed. Accepting Mr. Beeker's allegations as true, the Court is left to conclude that he was disciplined for the mere act of unwittingly being recorded while in the presence of/interacting with a group of scantily clad civilians. That is key to his claims. As such, the conduct Mr. Beeker points to in the cases of Officers Mitchell and Otero (*i.e.* posing for a photograph) is inherently dissimilar to that which he alleges he was disciplined for (*i.e.* unwittingly being recorded).

  Mr. Beeker also proffers the instance of "Officer Lavaniel Hicks, 42, who is black . . . throwing a fake snake into a marked Miami Beach SUV while Captain Feldman videotaped the reaction of Officer Corey Jackson, who is black, to the horseplay — which Captain Feldman personally posted in September 2019." (Am. Compl. ¶ 27.) According to Mr. Beeker, that conduct went unpunished despite the video being uploaded online by Captain Feldman. But again, Mr. Beeker pleads no facts to allow for a determination as to whether these officers would serve as valid comparators in "all material aspects." That is, he fails to establish whether Officers Hicks and Jackson knew that recording would be posted on the internet or, at minimum, whether they knew they were being recorded. Additionally, the contexts presented in Mr. Beeker's case and those of these officers is different—one of being in the presence of/interacting with a group of scantily clad civilians versus "horseplay."

  To be sure, the Court finds it insufficient for Mr. Beeker to allege that Officers Otero, Mitchell, Hicks, and Jackson were "similarly situated" to him on account of their "being photographed or videotaped engaging in what could be considered objectionable behavior by a police officer." (Am. Compl. ¶ 28.) That standard's subjectivity (*i.e.*, "what could be considered objectionable behavior") makes of it no standard at all. For example, posing with beachgoers, as Officer Otero did, could be considered "objectionable" to some and not to others. Viable comparators must be "similarly situated in all material aspects." *Stimson*, 835 Fed. App'x at 997. And again, accepting his assertions as true, the material aspects of the conduct Mr. Beeker complains he was unfairly punished for are: (1) being filmed without his awareness, and (2) simply being in the presence of/interacting with scantily clad civilians while being filmed. Mr. Beeker does not identify anyone of his rank engaging in that conduct in either respect and thus fails to identify a similarly-situated comparator for his Title VII claims.

  That failure also disposes of his ADEA claim. "To state a claim under ADEA, a plaintiff must allege the following elements: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she

was qualified to do the job; and (4) she was replaced by or otherwise lost a position to a younger individual." *Arafat v. Sch. Bd. of Broward Cty.*, 549 F. App'x 872, 875 (11th Cir. 2013). As an alternative to the latter, Mr. Beeker may allege that the City treated employees who were not members of his "protected class more favorably under similar circumstances." *See Greene v. Sch. Bd. of Broward Cty.*, No. 13-62644-CIV-MORENO, 2014 WL 3950387, at *5 (S.D. Fla. Aug. 12, 2014) (Moreno, J.). Because Mr. Beeker does not plead that he lost his job to a younger person, his only option is to argue along disparate treatment as measured by a non-class member under similar circumstances. That analysis is governed by the same one above requiring a "similarly situated" comparator, under which Mr. Beeker's pleading fails. *See Stinson*, 835 Fed. App'x at 997.

Independent of the above findings, the Court further finds that the sum of Mr. Beeker's pleadings do not otherwise support a plausible inference that he was discriminated against on account of his race, national origin, or age. Aside from pointing out demographic differences, Mr. Beeker's complaint does not plead sufficient facts to allow for a plausible a link between the disciplinary differences he cites and his race, age, or national origin. Correlation and causation are not the same; possibility and plausibility are distinct.

### 4. Conclusion

Because Mr. Beeker's Title VII and ADEA claims fail, so do his corresponding FCRA claims. On the above grounds and Mr. Beeker's failure to respond to the City's motion, the Court **grants** the City's motion (**ECF No. 35**) and directs the Clerk to **close** this case. All other motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on April 20, 2022.

_____
Robert N. Scola, Jr.
United States District Judge